**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ERIK DANIEL GONZALEZ,<br><br>        Petitioner,<br><br>    v.<br><br>A. HEDGPETH,<br><br>        Respondent. | Case No. 1:12-cv-001244-LJO-BAM-HC<br><br>FINDINGS AND RECOMMENDATIONS TO DENY PETITIONER'S MOTION FOR EXTENSION OF TIME AND FOR A STAY TO EXHAUST STATE COURT CLAIMS (DOC. 33), AND TO SCHEDULE THE FILING OF PETITIONER'S TRAVERSE<br><br>**DEADLINE FOR FILING OBJECTIONS: THIRTY(30) DAYS** |

    Petitioner is a state prisoner proceeding pro se and in forma pauperis with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rules 302 through 304. Pending before the Court is Petitioner's motion for a stay of the proceedings[1] to permit him to exhaust state court remedies, which was filed on December 2, 2013.

    Although the issues presented to the Court arise in the context of a motion for a stay, ruling on Petitioner's motion in effect

---

[1] Although Petitioner appears to seek both a stay and an extension of time, the Court understands Petitioner's motion to be a motion for a stay.

1

removes the availability of a federal forum with respect to new claims as to which Petitioner seeks to exhaust state court remedies. Accordingly, the undersigned proceeds by way of findings and recommendations.

### I. Background

#### A. Procedural History

In the petition filed on June 20, 2012,[2] Petitioner set forth claims of 1) prosecutorial misconduct, 2) trial court error in response to a jury question, 3) erroneous denial of defense access to juror information, 4) ineffective assistance of counsel (IAC) based on multiple omissions (failure to present DNA evidence, call alibi witness, present telephone records, and present a statement made by Luz Delgado to law enforcement), 5) insufficient evidence, and 6) prosecutorial misconduct in the form of knowingly presenting

---

[2] Dates of filing are calculated pursuant to the "mailbox rule." Habeas Rule 3(d) provides that a paper filed by a prisoner is timely if deposited in the institution's internal mailing system on or before the last day for filing. The rule requires the inmate to use the custodial institution's system designed for legal mail; further, timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or by a notarized statement setting forth the date of deposit and verifying prepayment of first-class postage. Id. Habeas Rule 3(d) reflects the "mailbox rule," initially developed in case law, pursuant to which a prisoner's pro se habeas petition is "deemed filed when he hands it over to prison authorities for mailing to the relevant court." Houston v. Lack, 487 U.S. 266, 276 (1988); Huizar v. Carey, 273 F.3d 1220, 1222 (9th Cir. 2001). The mailbox rule applies to federal and state petitions alike. Campbell v. Henry, 614 F.3d 1056, 1058-59 (9th Cir. 2010) (citing Stillman v. LaMarque, 319 F.3d 1199, 1201 (9th. Cir. 2003), and Smith v. Ratelle, 323 F.3d 813, 816 n.2 (9th Cir. 2003)). The mailbox rule, liberally applied, in effect assumes that absent evidence to the contrary, a legal document is filed on the date it was delivered to prison authorities, and a petition was delivered on the day it was signed. Houston v. Lack, 487 U.S. at 275-76; Roberts v. Marshall, 627 F.3d 768, 770 n.1 (9th Cir. 2010); Campbell v. Henry, 614 F.3d 1056, 1058-59 (9th Cir. 2010); Lewis v. Mitchell, 173 F.Supp.2d 1057, 1058 n.1 (C.D.Cal. 2001). The date a petition is signed may be inferred to be the earliest possible date an inmate could submit his petition to prison authorities for filing under the mailbox rule. Jenkins v. Johnson, 330 F.3d 1146, 1149 n.2 (9th Cir. 2003), overruled on other grounds, Pace v. DiGuglielmo, 544 U.S. 408 (2005). Here, Petitioner signed the petition on June 20, 2012. (Doc. 1, 9.)

perjured testimony. (Doc. 1.) His fourth through sixth claims were withdrawn because they were unexhausted. On November 7, 2012, the Court granted Petitioner a stay to permit Petitioner to exhaust state court remedies.

On July 26, 2013, after Petitioner had filed numerous status reports, the Court informed Petitioner that the stay had been conditioned on efficient efforts to exhaust state court remedies, and Petitioner had failed to explain how the conditions of which he complained had indeed impeded his ability to file a state court petition. The Court directed Petitioner to file a state petition in thirty days. (Doc. 23, 1-2.) [3]

On September 13, 2013, this Court found that Petitioner had failed to exhaust state court remedies in a timely and efficient manner, and the stay was vacated nunc pro tunc after Petitioner failed to comply with the order to file a state court petition. (Doc. 25, 1.) In November 2013, Respondent filed an answer addressing the merits of the petition.

On December 2, 2013, Petitioner filed the instant motion for an extension of time and for a stay of the proceedings to exhaust state

---

[3] In its order giving Petitioner a final period of thirty days to file a state petition, the Court stated:
> In his status reports, Petitioner has repeatedly complained about the lack of access to his legal property and law library. Petitioner is advised that the instances of which he explains are routine occurrences within the prison population and the Court cannot continue to stay the instant proceedings without further effort on Petitioner's part to exhaust the state court remedies. In particular, Petitioner fails to explain how the conditions for which he complains have indeed impeded his ability to file a petition in the state courts. Petitioner is advised that the Court conditioned the stay on the efficient pursuant of the state court remedies, and Petitioner is advised that he must proceed to exhaust the state court remedies in an efficient and timely manner....

(Doc. 23, 1-2.)

court remedies before the California Supreme Court with respect to claims concerning ineffective assistance of counsel (substantially similar to the IAC claims in the initial petition), actual innocence, selective prosecution, and excessive fines and restitution. (Doc. 33, 1.) Respondent filed opposition on January 16, 2014. After multiple extensions of time, Petitioner filed a reply on June 5, 2014.

### B. Circumstances of Petitioner's Delay

The timeliness of Petitioner's new claims is central to the Court's analysis of Petitioner's application for a stay. Thus, the procedurally pertinent facts will be set forth in the context of the governing legal requirements for timeliness of petitions filed under 28 U.S.C. § 2254.

Petitioner's petition for review of the affirmance of his criminal judgment was denied by the California Supreme Court (CSC) on June 22, 2011. (LD 8.)

Because the petition in this proceeding was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the AEDPA applies to the petition. Lindh v. Murphy, 521 U.S. 320, 327 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997). The AEDPA provides a one-year period of limitation in which a petitioner must file a petition for writ of habeas corpus. 28 U.S.C. § 2244(d)(1). As amended, § 2244(d)(1)(A) provides, "The limitation period shall run from the latest of – (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review...." Under this provision, a judgment becomes final either upon the conclusion of direct review or the expiration

of the time for seeking such review in the highest court from which review could be sought. Wixom v. Washington, 264 F.3d 894, 897 (9th Cir. 2001).

Here, on September 21, 2011, ninety days after the CSC denied review on June 22, 2011, the time for seeking certiorari expired. Supreme Court Rule 13; Porter v. Ollison, 620 F.3d 952, 958-59 (9th Cir. 2010); Bowen v. Roe, 188 F.3d 1157, 1159 (9th Cir. 1999). Thus, on September 21, 2011, the judgment was final within the meaning of 28 U.S.C. § 2244(d)(1)(A). Wixom v. Washington, 264 F.3d at 897 (quoting Smith v. Bowersox, 159 F.3d 345, 348 (8th Cir. 1998), cert. denied, 525 U.S. 1187 (1999)). The one-year statute of limitations began running on the following day, September 22, 2011, and, absent any tolling or exception of the statute of limitations, expired on September 21, 2012.

On June 20, 2012, Petitioner constructively filed the initial petition in the instant case while he was housed at Salinas Valley State Prison (SVSP). (Doc. 1 at 9, 11.)

On September 17, 2012, Petitioner filed administrative complaints with the prison regarding law library access, but documentation concerning the claim reflects that Petitioner only submitted requests for library access in December 2011, April 2012, and June 2012; further, he received pager services when he did not have priority legal user status for the library. (Doc. 11, 2-6.)

On September 21, 2012, this Court denied Petitioner's request for a stay pursuant to Rhines v. Weber, 544 U.S. 269 (2005), which Petitioner had made in response to the Court's order to Petitioner to show cause why the petition should not be dismissed as a mixed petition containing some claims (claims four through six) as to

5

which state court remedies had not been exhausted. In denying the Rhines stay, the Court found that Petitioner had not set forth any basis for a finding of good cause for a stay. (Doc. 12.) The previous stay of the action was based on Kelly v. Small, 315 F.3d 1063 (9th Cir. 2003), and it was granted only after Petitioner had withdrawn his unexhausted claims. (Doc. 14.)

Various status reports filed by Petitioner during the stay reflect Petitioner's statements regarding his progress thereafter. On December 13, 2012, Petitioner reported that he had access to the law library only on November 27, 2012 and December 4, 2012; he had not received requested "caselaws." (Doc. 15.)

In early January 2013, Petitioner reported having only two more days of law library access, the last being December 10, 2012; further, he had requested law library access administratively. (Doc. 16.) Petitioner corresponded with prospective counsel and others in February 2013 but was not getting physical access to the law library; he had no access to his legal property from February 21, 2013 through March 4, 2013, due his transfer to Pleasant Valley State Prison (PVSP) on February 21, 2013. (Docs. 17-19.) In late April 2013, Petitioner asserted that he was unable to keep up, and due to two moves had been without his property (apparently for two weeks), and in June 2013, he reported that his new work assignment interfered with law library access. (Docs. 20-21.) On July 13, 2013, Petitioner reported that after some facility shutdowns due to fighting among inmates, he anticipated expanded opportunities for law library access due to a change in work schedules. (Doc. 22.)

On October 7, 2013, after the stay was vacated, Petitioner was transferred to R. J. Donovan Correctional Facility. (Doc. 28.)

On February 20, 2014, Petitioner was transferred to Wasco State Prison. (Doc. 37.) In an unsolicited status report filed March 19, 2014, Petitioner stated that he had requested law library access, information, and help from counsel, and he also requested guidance from the Court. He attached an application for priority legal user status from January 2014 that was denied for not having a court deadline (doc. 41 at 4), and he stated that he was in reception at Wasco for two weeks and wanted main line housing (id. at 5). He was ducated for the next law library rotation. (Doc. 41 at 7-9.) In April 2014, he stated that he only got access to the library once on March 17, 2014, had asked for help, and did not have his legal property and thus did not have access to Respondent's opposition to his motion for a stay. (Docs. 42, 46.) On May 30, 2014, he was moved to a new yard, so there was an unspecified period of separation from his legal property. (Doc. 46, 2.) In his reply to Respondent's opposition to the stay motion, which Petitioner filed on June 5, 2014, Petitioner includes a copy of "the state form to exhaust state claims" which he had filled out without access to his legal property. (Id. at 3.) This is a state habeas corpus form directed to the Tulare County Superior Court raising claims involving the presentation of perjured testimony of Luis Alvarez and Luz Maria Delgado; ineffective assistance of counsel in failing to present DNA evidence and a statement of Luz Delgado to law enforcement, call alibi witnesses, object to prejudicial misconduct or seek instructions to cure it; actual innocence based on weak and untrustworthy evidence of guilt; and excessive restitution fines. (Doc. 46, 7-15.)

///

II. <u>Petitioner's Motion for a Stay</u>

A district court has discretion to stay a petition which it may validly consider on the merits. <u>Rhines v. Weber</u>, 544 U.S. 269, 276 (2005); <u>King v. Ryan</u>, 564 F.3d 1133, 1138-39 (9th Cir. 2009), <u>cert. den.</u>, 558 U.S. 887. A petition may be stayed either under <u>Rhines</u>, or under <u>Kelly v. Small</u>, 315 F.3d 1063 (9th Cir. 2003). <u>King v. Ryan</u>, 564 F.3d at 1138-41.

Under <u>Rhines</u>, the Court has discretion to stay proceedings; however, this discretion is circumscribed by the AEDPA. <u>Rhines</u>, 544 U.S. at 276-77. In light of the AEDPA's objectives, "stay and abeyance [is] available only in limited circumstances" and "is only appropriate when the district court determines there was good cause for the petitioner=s failure to exhaust his claims first in state court." <u>Id</u>. at 277-78. A stay of a mixed petition pursuant to <u>Rhines</u> is required only if 1) the petitioner has good cause for his failure to exhaust his claims in state court; 2) the unexhausted claims are potentially meritorious; and 3) there is no indication that the petitioner intentionally engaged in dilatory litigation tactics. <u>Id.</u>

A petition may also be stayed pursuant to the procedure set forth by the Ninth Circuit in <u>Kelly v. Small</u>, 315 F.3d 1063 (9th Cir. 2003). Under this three-step procedure: 1) the petitioner files an amended petition deleting the unexhausted claims; 2) the district court stays and holds in abeyance the fully exhausted petition; and 3) the petitioner later amends the petition to include the newly exhausted claims. <u>See,</u> <u>King v. Ryan</u>, 564 F.3d 1133, 1135 (9th Cir. 2009). However, the amendment is only allowed if the additional claims are timely. <u>Id</u>. at 1140-41.

8

A stay under Rhines permits a district court to stay a mixed petition and does not require that unexhausted claims be dismissed while the petitioner attempts to exhaust them in state court. In contrast, a stay pursuant to the three-step Kelly procedure allows a district court to stay a fully exhausted petition, and it requires that any unexhausted claims be dismissed. Jackson v. Roe, 425 F.3d 654, 661 (9th Cir. 2005). In this circuit it is recognized that the Kelly procedure remains available after the decision in Rhines and is available without a showing of good cause. King v. Ryan, 564 F.3d at 1140.

### A. Absence of Good Cause for a Rhines Stay

The Supreme Court has not articulated what constitutes good cause under Rhines, but it has stated that a petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute good cause for him to file a protective petition in federal court. Pace v. DiGuglielmo, 544 U.S. 408, 416 (2005). The Ninth Circuit has held that the standard is a less stringent one than that for good cause to establish equitable tolling, which requires that extraordinary circumstances beyond a petitioner's control be the proximate cause of any delay. Jackson v. Roe, 425 F.3d 654, 661 62 (9th Cir. 2005). The Ninth Circuit has recognized, however, that "a stay and abeyance should be available only in limited circumstances." Id. at 661 (internal quotation marks omitted); see, Wooten v. Kirkland, 540 F.3d 1019, 1024 (9th Cir. 2008), cert. denied, - U.S.- , 129 S.Ct. 2771 (2009) (concluding that a petitioner's impression that counsel had exhausted a claim did not demonstrate good cause).

Recently the Ninth Circuit Court of Appeals found that the district court had abused its discretion in deciding that the Rhines good cause standard was not satisfied where a § 2254 petitioner provided argument and supporting evidence that his appellate counsel was ineffective in failing to investigate and raise the ineffective assistance of counsel (IAC) at trial for trial counsel's failure to present significant mitigating evidence at the penalty phase of a capital case.  Blake v. Baker, 745 F.3d 977 (9th Cir. 2014), pet. cert. filed June 14, 2014, no. 13-1488.  The court in Blake stated the following regarding the good cause standard:

> The good cause element is the equitable component of the Rhines test. It ensures that a stay and abeyance is available only to those petitioners who have a legitimate reason for failing to exhaust a claim in state court. As such, good cause turns on whether the petitioner can set forth a reasonable excuse, supported by sufficient evidence, to justify that failure. See Pace, 544 U.S. at 416, 125 S.Ct. 1807 ("A petitioner's reasonable confusion... will ordinarily constitute 'good cause' [under Rhines ]...." (emphasis added)). (Footnote omitted.)  An assertion of good cause without evidentiary support will not typically amount to a reasonable excuse justifying a petitioner's failure to exhaust. In Wooten, for example, the petitioner's excuse that he was "under the impression" that his claim was exhausted was not a reasonable excuse because no evidence indicated that the petitioner's ignorance was justified. To the contrary, the petitioner's attorney sent him a copy of his state petition, which did not mention the unexhausted claim, and the petitioner did not argue that his attorney provided ineffective assistance for failing to include the claim. 540 F.3d at 1024 n. 2; see also King v. Ryan, 564 F.3d 1133, 1138 (9th Cir.2009) (holding that the district court did not abuse its discretion in finding that the petitioner did not establish good cause when his factual allegations were "insufficiently detailed").
> ....
>
> While a bald assertion cannot amount to a showing of good cause, a reasonable excuse, supported by evidence to

10

justify a petitioner's failure to exhaust, will. Id. at 982.

Respondent correctly contends that Petitioner has not shown good cause for a stay. This Court previously found that Petitioner failed to show good cause for a stay and failed to exhaust his state court remedies in an efficient and timely fashion after a stay was granted. Petitioner has not demonstrated any basis for abandoning or amending those findings or for concluding that subsequent events establish good cause for a stay.

Petitioner's counsel's failure to raise the claims which Petitioner now seeks to raise is not ipso facto sufficient to explain or show cause for Petitioner's failure to file a state court petition in the years following the finality of the judgment. Although Petitioner did not always have physical access to the law library, Petitioner attempted to use the law library only once in 2011 and twice in 2012 (in April and June) in the period pertinent to his filing his federal claims here in June 2012.

During the pendency of the lengthy Kelly stay, Petitioner visited the law library on three days in December 2012. Although he corresponded with persons outside the prison regarding a lack of law library access in February 2013, it appears he experienced two moves and was separated from his property for two weeks. His prison work assignment allegedly interfered to an uncertain extent with his law library access in May 2013, but it appears that those circumstances resolved.

After the stay was vacated in September 2013, Petitioner was moved twice (to RJ Donovan and Wasco) and thus suffered some separation from his legal property, but he had access to the law

library by March 2014.

In summary, before and during the stay, Petitioner suffered some limitations on law library access or access to his property, but it does not appear that these occasional limitations affected Petitioner's ability to raise his new claims. It does not appear that Petitioner utilized the paging service or otherwise sought alternative sources of legal information. Further, Petitioner has failed to show any causal connection between the instances of limited access to legal resources or property and the failure to file a state petition. During the pertinent period, Petitioner was able to file a federal petition and to file multiple requests for relief here. The Court concludes that the record is fully consistent with the Court's previous findings and provides no basis to disturb them.

Since the stay was vacated in July 2013, Petitioner has been transferred twice and moved within an institution once with associated short periods of separation from his legal property; further, he continues to complain of limited access to the law library. However, these periods are consistent with normal incidents of prison life and have not been shown to be unusual. Further, Petitioner has been able to file repeated motions and reports in the present case, and he has been able to set forth the claims he seeks to exhaust in a form petition for the state trial court. These claims concern trial court matters that by virtue of their nature must have been known to Petitioner before the judgment became final. Petitioner continues to fail to show a causal connection between any limitations on his access to legal resources and his failure to exhaust state court remedies.

Accordingly, it is concluded that Petitioner has not shown good cause for a stay pursuant to Rhines.

### B. Kelly Stay

With respect to Petitioner's motion for another Kelly stay, it has been recognized that it is appropriate to deny a Kelly stay where a petitioner's new claims are determined to be untimely and do not relate back to exhausted claims. King v. Ryan, 564 F.3d at 1141-42.

#### 1. The Running of the Statute of Limitations

Here, even if Petitioner had otherwise shown entitlement to a stay, Petitioner's new claims would be untimely.

As previously detailed, on September 21, 2011, ninety days after the CSC denied review on June 22, 2011, the time for seeking certiorari expired. Supreme Court Rule 13; Porter v. Ollison, 620 F.3d 952, 958-59 (9th Cir. 2010); Bowen v. Roe, 188 F.3d 1157, 1159 (9th Cir. 1999). Thus, on September 21, 2011, the judgment was final within the meaning of 28 U.S.C. § 2244(d)(1)(A). Wixom v. Washington, 264 F.3d at 897 (quoting Smith v. Bowersox, 159 F.3d 345, 348 (8th Cir. 1998), cert. denied, 525 U.S. 1187 (1999)). The one-year statute of limitations commenced running on the following day, September 22, 2011. Fed. R. Civ. P. 6(a); see Waldrip v. Hall, 548 F.3d 729, 735 n.2 (9th Cir. 2008), cert. den., 130 S.Ct. 2415 (2010); Patterson v. Stewart, 251 F.3d 1243, 1246 (9th Cir. 2001). Absent any tolling or exception to the statute of limitations, the limitation period expired one year later on September 21, 2012. As a result, Petitioner's new claims, which have been subsequently brought to federal court, would be barred by § 2244(d). 28 U.S.C. § 2244(d)(1)(A).

### 2. Statutory Tolling

Title 28 U.S.C. ' 2244(d)(2) states that the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the one-year limitation period. 28 U.S.C. ' 2244(d)(2). Once a petitioner is on notice that his habeas petition may be subject to dismissal based on the statute of limitations, he has the burden of demonstrating that the limitations period was sufficiently tolled by providing the pertinent facts, such as dates of filing and denial. Zepeda v. Walker, 581 F.3d 1013, 1019 (9th Cir. 2009) (citing Smith v. Duncan, 297 F.3d 809, 814-15 (9th Cir. 2002), abrogation on other grounds recognized by Moreno v. Harrison, 245 Fed.Appx. 606 (9th Cir. 2007)).

No basis for statutory tolling appears. The filing of Petitioner's federal petition did not toll the running of the statute because the the pendency of a petition in a federal court does not toll the running of the statute under 28 U.S.C. ' 2244(d)(2). Duncan v. Walker, 533 U.S. 167, 172 (2001).

### 3. Equitable Tolling

Further, Petitioner does not appear to be entitled to equitable tolling of the statute, which requires that the petitioner show that he or she has been diligent, and extraordinary circumstances have prevented the petitioner from filing a timely petition. Holland v. Florida, – U.S. –, 130 S.Ct. 2549, 2560, 2562 (2010). Petitioner bears the burden of showing the requisite extraordinary circumstances and diligence. Chaffer v. Prosper, 592 F.3d 1046, 1048 (9th Cir. 2010). A petitioner must provide specific facts regarding what was done to pursue the petitioner's claims to

14

demonstrate that equitable tolling is warranted. Roy v. Lampert, 465 F.3d 964, 973 (9th Cir. 2006). Conclusional allegations are generally inadequate. Williams v. Dexter, 649 F.Supp.2d 1055, 1061-62 (C.D.Cal. 2009). The petitioner must show that the extraordinary circumstances were the cause of his untimeliness and that the extraordinary circumstances made it impossible to file a petition on time. Ramirez v. Yates, 571 F.3d 993, 997 (9th Cir. 2009). Where a prisoner fails to show any causal connection between the grounds upon which he asserts a right to equitable tolling and his inability to timely file a federal habeas application, the equitable tolling claim will be denied. Gaston v. Palmer, 417 F.3d 1030, 1034-35 (9th Cir. 2005).

Here, Petitioner has not shown any extraordinary circumstances. Insofar as Petitioner relies on his ignorance of the law and his status as a pro se litigant operating from prison with limited resources, Petitioner's pro se status is not an extraordinary circumstance. Chaffer v. Prosper, 592 U.S. 1046, 1049 (9th Cir. 2010). A pro se petitioner's confusion or ignorance of the law is not alone a circumstance warranting equitable tolling. Rasberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006).

Likewise, limitations on law library access and research materials are not extraordinary, but rather are normal conditions of prison life. Chaffer v. Prosper, 592 F.3d at 1049. Further, Petitioner has not shown how any specific instance of allegedly inadequate access to legal resources or property caused him to be unable to file a timely petition.

Accordingly, the Court concludes that Petitioner has not shown that the limitation period was equitably tolled.

4. <u>Relation Back of Claims</u>

Even if otherwise untimely filed, an amendment to a pleading relates back to the date of the original pleading when 1) the law that provides the applicable statute of limitations allows relation back, 2) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out, or attempted to be set out, in the original pleading, or 3) the amendment changes the party or naming of a party under specified circumstances. Fed. R. Civ. P. 15(c)(1). In a habeas corpus case, the "original pleading" referred to in Rule 15 is the petition. <u>Mayle v. Felix</u>, 545 U.S. 644, 655 (2004). A habeas petition differs from a complaint in an ordinary civil case, however, because although notice pleading is sufficient in ordinary civil cases, it fails to meet the requirements of Habeas Rule 2(c), which requires that a habeas petition specify all the grounds for relief available to the petitioner and state the facts supporting each ground. <u>Id.</u>

Relation back is appropriate in habeas cases where the original and amended petitions state claims that are tied to a common core of operative facts. <u>Mayle</u>, 545 U.S. at 664. The claims added by amendment must arise from the same core facts as the timely filed claims and must depend upon events not separate in "both time and type" from the originally raised episodes. <u>Id.</u> at 657. Thus, the terms "conduct, transaction, or occurrence" in Fed. R. Civ. P. 15(c)(1)(B) are not interpreted so broadly that it is sufficient that a claim first asserted in an amended petition simply stems from the same trial, conviction, or sentence that was the subject of a claim in an original petition. <u>Id.</u> at 656-57. In <u>Mayle</u>, the Court concluded that the petitioner's pretrial statements, which were the

16

subject of an amended petition, were separate in time and type from a witness's videotaped statements, which occurred at a different time and place and were the basis of a claim in the original petition. Thus, relation back was not appropriate. Mayle, 545 U.S. at 657, 659-60.

Here, Petitioner's new claims concern the ineffective assistance of counsel based on multiple omissions (failure to present DNA evidence, alibi witnesses, telephone records, and a statement of Luz Delgado), actual innocence based on the weakness of the prosecution evidence, selective prosecution, and excessive fines and restitution. The new claims relate to counsel's investigation and handling of the trial, the weight of the evidence, the conduct of the prosecution in instituting and maintaining the prosecution, and the components of the sentence that involve fines and restitution. The original claims relate to presentation of particular testimony alleged to have been perjured, and to trial court error in responding to a jury question and to a defense request for juror information. The new claims are based on events that are different in both time and type from those involved in the originally raised claims. Although both the new claims and the original claims relate to proceedings before the jury, this is not a sufficient relationship to permit relation back. Cf. Hebner v. McGrath, 543 F.3d 1133, 1138-39 (9th Cir. 2008) (holding that a claim concerning jury instructions that allegedly lowered the burden of proof did not relate back to a claim concerning the admissibility of evidence).

Accordingly, the Court concludes that Petitioner's new claims, which are untimely, do not relate back to the claims in the original

petition.  Therefore, permitting a stay to exhaust the claims would be futile because it appears that the claims would be untimely.

In summary, in accordance with the foregoing analysis, it will be recommended that the Court deny Petitioner's motion for a stay.

Further, review of the docket shows that Petitioner's stay motion was filed soon after the answer to the petition was filed; no traverse has been filed.  In an effort to reduce further delay, it will be recommended that a thirty-day period be scheduled for the filing of a traverse by Petitioner.

III.   Recommendations

In accordance with the foregoing analysis, it is RECOMMENDED that:

1) Petitioner's motion for a stay be DENIED; and

2) A thirty-day period be SCHEDULED for the filing of Petitioner's traverse.

These findings and recommendations are submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. ' 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned AObjections to Magistrate Judge=s Findings and Recommendations.@  Replies to the objections shall be served and filed within fourteen (14) days (plus three (3) days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge=s ruling pursuant to 28 U.S.C. ' 636 (b)(1)(C).  The parties are advised that failure to file objections within the

specified time may "waive their right to challenge the magistrate's factual findings" on appeal. Wilkerson v. Wheeler, __ F.3d __, __, No. 11-17911, 2014 WL 6435497, at *3 (9th Cir. Nov. 18, 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **January 13, 2015**         /s/ *Barbara A. McAuliffe*
                                        UNITED STATES MAGISTRATE JUDGE